NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000571
29-SEP-2017
08:46 AM

NO. CAAP-16-0000571

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
DEAN VICTOR MATUU, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 15-1-0128)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Dean Victor Matuu (**Matuu**) appeals from the Judgment of Conviction and Sentence (**Judgment**), filed on July 20, 2016, in the Circuit Court of the First Circuit (**Circuit Court**).[1] Following a jury trial, Matuu was convicted of Assault in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 707-710 (2014).[2] Matuu was sentenced to a five-year term of incarceration.

Matuu raises two points of error on appeal, arguing: (1) there was no substantial evidence to support Matuu's

---

[1] The Honorable Glenn J. Kim presided.

[2] HRS § 707-710 provides in relevant part:

§707-710 **Assault in the first degree.** (1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.

conviction because the State did not prove beyond a reasonable doubt facts negating his justification defenses; and (2) the Circuit Court's instruction on the use of deadly force in self-protection was prejudicially erroneous and misleading.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Matuu's points of error as follows:

(1) Matuu contends that there was no substantial evidence to support his conviction because the State did not prove beyond a reasonable doubt that Matuu did not act in self-defense or defense of others. The State submits that the record contains substantial evidence to support the conviction, and that the verdict indicates that the jury simply did not believe Matuu or that it did not believe that his actions were justified.

The Hawai'i Supreme Court has long held:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

State v. Xiao, 123 Hawai'i 251, 257, 231 P.3d 968, 974 (2010) (citation, internal quotation marks, and emphasis omitted; format altered).

HRS § 703-304 (2014) provides, in relevant part:

> **§ 703-304 Use of force in self-protection.** (1) Subject to the provisions of this section and of section 703-308, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.
>
> (2) The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.

"[Self-defense] is not designated as an affirmative defense by the Hawai'i Penal Code or any other statute." State v. Lubong, 77 Hawai'i 429, 431, 886 P.2d 766, 768 (App. 1994).

Furthermore,

> a defendant who comes forward with some credible evidence of facts constituting the defense is, pursuant to HRS § 701-115(2)(a) (1985), "entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt[.]" Moreover, once the issue of self-protection is raised, the burden is on the prosecution to disprove the facts that have been introduced or to prove facts negativing the defense and to do so beyond a reasonable doubt.

Id. (citations omitted).

Here, whether sufficient evidence negated Matuu's justification of self-defense requires an analysis of whether (1) Matuu used deadly force, and (2) whether Matuu's belief as to the necessity of deadly force was reasonable. HRS § 703-304(2).

"'Deadly force' means force which the actor uses with the intent of causing or which the actor knows to create a substantial risk of causing death or serious bodily harm." HRS § 703-300 (2014). HRS § 703-300 also provides that "'believes' means reasonably believes." In Lubong, this court concluded that charging at an attacker with a knife constituted deadly force. Lubong, 77 Hawai'i at 432, 886 P.2d at 769. The undisputed

evidence in this case is that during an incident involving the decedent, Frank Kapesi (**Frank**), Matuu, and Kapesi Kapesi (**Kapesi**), Matuu left the room, obtained a knife from the kitchen, and upon returning to the room, stabbed Frank, who died of the wounds. To this end, the evidence sufficiently supports a jury finding that Matuu used deadly force.

The Hawai'i Supreme Court has adopted a two-prong test for assessing the reasonableness of a defendant's belief as to the need to use deadly force in self-protection:

> The first prong is subjective; it requires a determination of whether the defendant had the requisite belief that deadly force was necessary to avert death, serious bodily injury, kidnapping, rape, or forcible sodomy.
>
> If the State does not prove beyond a reasonable doubt that the defendant did not have the requisite belief that deadly force was necessary, the factfinder must then proceed to the second prong of the test. This prong is objective; it requires a determination of whether a reasonably prudent person in the same situation as the defendant would have believed that deadly force was necessary for self-protection.

State v. Culkin, 97 Hawai'i 206, 215, 35 P.3d 233, 242 (2001) (citations and ellipsis omitted).

Assuming, *arguendo*, that the jury determined Matuu believed deadly force was necessary to avert death or serious bodily injury, we conclude that the evidence adduced at trial was sufficient to negate Matuu's argument that a reasonably prudent person would have believed that deadly force was necessary to prevent death or serious bodily injury.

Matuu testified that he was afraid of Frank because he had previously witnessed Frank punch Kapesi unconscious, another family member appears to have been attacked by Frank, and Frank had previously threatened to beat him up. In addition, on the

day of the incident, Frank appeared to be high on drugs, and became aggressive toward Matuu, threatening him and throwing punches. Matuu testified that when Frank started throwing punches, Matuu began to wrestle him and they were "crashing all over through everything." Kapesi then tried to break them up and Frank slammed Kapesi to the ground and, according to Matuu, punched Kapesi several times. Matuu testified that he was thinking that when Frank was done with Kapesi, he would be next, and so he went to the kitchen and grabbed a knife. Although two knives were found, Matuu only admitted to grabbing one. Matuu testified that when he returned, Frank was on Kapesi, and Matuu stabbed him. Matuu stated that he only remembered stabbing Frank once, in the side, to stop him and that he did not intend to kill Frank.

Kapesi testified, *inter alia*, that he heard Matuu and Frank arguing and then heard something break. He ran to where they were, saw them sort of wrestling, and then he jumped in to try to break them apart. Kapesi testified that Frank then grabbed him, slammed him on the ground, causing Kapesi to lose his breath. Kapesi stated that Frank was on top of him, but that Frank was not hitting him. Kapesi testified that after he got his wind, he got up and was yelling to "[s]top already" and then he saw Matuu, coming quickly from the kitchen area. Kapesi said he was standing between Frank and Matuu and put his hand up to stop Matuu, to block him, and got a little cut on his hand, like a stab. Kapesi said he was in shock, tending to his cut. The next thing he knew, Frank was on the ground, gasping for air,

asking for help, saying that he could not breathe. At the time, he saw Frank bleeding from the side; later he saw what looked like little cuts in his chest. Kapesi did not observe any wounds on Matuu. There was no evidence that Frank was armed.

The police found a broken knife blade near Frank's foot. The medical examiner found a second knife blade broken off in the wound track in Frank's chest. Frank had both sharp force injuries, including four stab wounds of the torso and two incised wounds, and blunt force injuries to the head, torso, and extremities. Three of the stab wounds were on the left side of the chest and the fourth was on the left side of the back. The cause of death was the stab wounds to Frank's torso; the wound to the back and the wound where the knife blade was found were both potentially fatal, meaning either of them could have led to death on their own. Frank had methamphetamine and amphetamine, a metabolite of methamphetamine, in his blood, but not at levels that were relevant to Frank's cause of death.

In light of the above, as well as the other testimony and evidence presented at trial, there is substantial evidence to support the jury's conclusion that Matuu's use of deadly force in self-defense was not justified. The jury could have given greater weight to Kapesi's testimony as to how the stabbing incident unfolded or disbelieved Matuu's version altogether. The evidence suggested that Frank, who was unarmed, was stabbed with two knives, perhaps with the second knife being used after the first knife broke. We conclude that there was substantial evidence to support a conclusion that a reasonably prudent person

would not believe that it was necessary to stab Frank in the torso multiple times to protect himself against death or serious injury.

Regarding the defense of others, HRS § 703-305 (2014) provides:

> **§ 703-305. Use of force for the protection of other persons.** (1) Subject to the provisions of this section and of section 703-310, the use of force upon or toward the person of another is justifiable to protect a third person when:
>
> (a) Under the circumstances as the actor believes them to be, the person whom the actor seeks to protect would be justified in using such protective force; and
> (b) The actor believes that the actor's intervention is necessary for the protection of the other person.

A defendant's belief that intervention is necessary must be "reasonable." State v. Mark, 123 Hawai'i 205, 220, 231 P.3d 478, 493 (2010) (citing HRS § 703-300). Whether Matuu's actions were justified in defense of Kapesi requires an analysis of (1) whether Kapesi would have been justified in using deadly force under the circumstances as Matuu believed them to be, and (2) whether Matuu reasonably believed that his use of deadly force was necessary for Kapesi's protection. See id. at 220, 231 P.3d at 493 (citing HRS §§ 703-300 & 703-305).

For roughly the same reasons that the self-defense argument fails, this argument fails as well. Particularly, if the jury believed Kapesi's testimony, although Frank slammed Kapesi to the ground, Frank did not hit Kapesi and Kapesi had regained his wind and was on his feet trying to keep Frank and Matuu apart when Frank was stabbed. It appears that the jury was well within its province to conclude that the evidence proved

7

beyond a reasonable doubt that Kapesi would not have been justified in stabbing Frank under these circumstances. "[I]n order to use force to protect a third person, the actor must have a reasonable belief that, as to the third person, . . . deadly force is necessary to protect himself against death [or] serious bodily injury[.]" Mark, 123 Hawai'i at 220, 231 P.3d at 493. We conclude that the record contains evidence of sufficient quality and probative value to enable a person of reasonable caution to conclude that Matuu did not reasonably believe that deadly force was necessary for Kapesi's protection.

(2) Matuu contends that the Circuit Court erred by rejecting Defendant's Proposed Instruction 1 over his objection. Defendant's Proposed Instruction 1 modified the Circuit Court's proposed instruction as follows (the proposed added wording is underlined):

> If you unanimously determine beyond a reasonable doubt that the defendant used "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Used." If you determine that the defendant did not use "deadly force," or are unable to reach unanimous agreement on this issue, then you are to proceed to the section in this instruction entitled "Deadly Force Not Used." You must then follow the law in the applicable section to determine the second issue, which is whether the force used by the defendant was justified.

Matuu contends that the Circuit Court's instruction was prejudicially erroneous and misleading because "the jury may not have unanimously determined beyond a reasonable doubt that Matuu had used deadly force." The State counters that because the jury first had to find that Matuu committed Assault in the First Degree before considering self-defense, it must have found

8

unanimously and beyond a reasonable doubt that Matuu used deadly force.

As the State submits, Matuu's conviction for Assault in the First Degree establishes that the jury, unanimously and beyond a reasonable doubt, found that Matuu had used deadly force.

The jury instruction for Assault in the First Degree reads in pertinent part:

> A person commits the offense of Assault in the First Degree if he intentionally or knowingly causes serious bodily injury to another person.
> There are two material elements of the offense of Assault in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.
> These two elements are:
> 1. That on or about January 24, 2015, in the City and County of Honolulu, State of Hawaii, the Defendant caused serious bodily injury to Frank Kapesi; and
> 2. That the Defendant did so intentionally or knowingly.
> "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

(Emphasis added).

The Circuit Court also instructed the jury that "[i]n order for the prosecution to prove an element, all twelve jurors must unanimously agree that the same act has been proved beyond a reasonable doubt."

In its self-defense instruction, the court instructed the jury as follows regarding the issue of deadly force:

> The first issue is: Did the defendant use "deadly force?"
> "Deadly Force" means force which the defendant uses with the intent of causing, or which he knows to create a substantial risk of causing, death or serious bodily injury.
> . . . .
> "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

(Emphasis added).

According to these instructions, the commission of Assault in the First Degree requires the use of deadly force. It requires the actor to cause serious bodily injury either intentionally or knowingly. In addition, the self-defense instruction defines deadly force as force that the defendant intends or knows will create "a substantial risk of . . . death or serious bodily injury." Therefore, where the jury found that Matuu committed Assault in the First Degree, it necessarily found that he used deadly force. Since the jury was instructed that, for each element, they must unanimously agree that the same act has been proved beyond a reasonable doubt, the jury's decision that the element of deadly force had been satisfied must have been both unanimous and beyond a reasonable doubt.

In addition, "[j]ury instructions . . . must be considered as a whole. Moreover, a refusal to give an instruction that correctly states the law is not in error if another expressing a substantially similar principle is given." Samson v. Nahulu, 136 Hawai'i 415, 425, 363 P.3d 263, 273 (2015) (citation omitted). Here, the court sufficiently instructed the jury regarding unanimity. The court first stated that in order to convict, the jury must unanimously agree to each element of the crime beyond a reasonable doubt. Then the court gave a general unanimity instruction. In addition, in the instruction for self-defense, the court instructed the jury that "[t]he burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified. If the

prosecution does not meet its burden, then you must find the defendant not guilty." The additional unanimity instruction requested by Matuu was unnecessary.

Accordingly, we conclude that, when viewed as a whole, the jury instructions given by the Circuit Court were not prejudicially insufficient, erroneous, inconsistent or misleading.

For these reasons, the Circuit Court's July 20, 2016 Judgment is affirmed.

DATED: Honolulu, Hawai'i, September 29, 2017.

On the briefs:

John M. Tonaki,
Public Defender,
Jon N. Ikenaga,
Deputy Public Defender,
For Defendant-Appellant.

Keith M. Kaneshiro,
Prosecuting Attorney,
Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge